Bellacosa, J.
(concurring). I agree that there should be an affirmance of the conviction. No Fourth Amendment right of the defendant, an Ecuadorian drug courier, was violated by the pat-down search conducted by a veteran customs officer at JFK Airport upon defendant’s arrival for entry into the United States transporting two packets of cocaine strapped to his ankles.
My separate view concerns the majority’s rationale for deciding this case — the adoption of a “some suspicion” legal standard to test the legality of the customs officer’s action. The policy struggle to fashion an articulable test by which customs agents and law enforcement officials can regulate their actions, and by which courts can judge those actions, is concededly difficult and delicate. Important personal privacy protections afforded by our Fourth Amendment may be involved.
The facts of this case and the state of the law, however, lead me to conclude that the struggle in this area is largely unnecessary. The solution is much simpler than appears. Constitutional and pragmatic analysis clearly favors the view that a pat-down search of the kind used in this vein of cases is valid without a new minimal level of suspicion being required. This is one of those rare categories of law enforcement action *181 —protecting the vast borders of the United States — which lie outside the equally vast protective reaches of the Fourth Amendment (United States v Montoya de Hernandez, 473 US 531, 538; United States v Ramsey, 431 US 606, 619-621; see also, Almeida-Sanchez v United States, 413 US 266, 272). Our own guiding precedent states plainly: "The mere crossing of the border is a sufficient basis for a search” (People v Dworkin, 30 NY2d 706, 708).
Despite these firm principles and predicates, the majority proceeds to reject the very same rule which it concedes is the prevalent one today among the courts of this Nation (majority opn, at 177, and cases cited there) and adopts a new "some level of suspicion” test. This new low-level suspicion standard dilutes the potency of the "probable cause” and "reasonable suspicion” standards under the Fourth Amendment because it introduces yet another "subtle verbal gradation[ ] [which] may obscure rather than elucidate the meaning of the provision in question” (United States v Montoya de Hernandez, 473 US 531, 541, supra). If luggage may be minutely probed and pored over by customs officials as standard operating procedure without any level of suspicion — and that is the law — then I see nothing illegal in applying the no suspicion rule with respect to border-entry pat downs which are, in my view, no more intrusive as a matter of degree or of kind.
This new verbal placebo is also manifestly susceptible to certain compliance or easy evasion and, thus, is functionally no standard at all. It may seem viscerally distasteful to swallow a standardless border-entry pat-down search, but such forthrightness, when constitutional and practical considerations warrant, is the better and preferred course in my view so long as a choice is available to us.
The authorities relied upon by the majority for the slim standard it adopts may even be read as more consonant with the other prevalent set of authorities and with the rule preference I urge. Indeed, the First Circuit nicely sums up the situation: "[T]he several apparently differing standards that other courts have applied to routine border searches simply represent alternative formulations of the 'no suspicion’ standard that have arisen in an effort to articulate what actually is assumed to occur” (United States v Braks, 842 F2d 509, 515 [1st Cir] [emphasis added]).
Let me quickly note that the well-established test I propose here would not justify pat downs predicated on arbitrary and *182 illegal factors like race or gender, abhorrent to our public policy and to our sense of fair and equal justice. The well-stated formulation of the First Circuit does not erect unreasonable barriers against entry through our borders or unreasonable intrusions on personal privacy, and adequately circumscribes the actions of customs officials when it allows such pat-down searches in "a reasonable manner, based on subjective suspicion alone, or even on a random basis” (United States v Braks, 842 F2d 509, 514, supra [emphasis added], quoting, United States v Stornini, 443 F2d 833, 835 [1st Cir], cert denied 404 US 861).
In sum, this case should not be decided on the relative opaqueness of the Supreme Court’s present view of pat-down border searches (majority opn, at 177) or, for that matter, on any prediction of its future view. I believe the great weight of authority presently available as a guide to us from that court, from this court, and from most courts which have addressed the issue, conclusively establishes that this type pat-down border search is outside the Fourth Amendment and thus requires no new "some suspicion” standard to justify it.
We would do better to affirm in this case for the reasons developed in the prevalent authorities.
Chief Judge Wachtler and Judges Simons, Kaye and Alexander concur with Judge Hancock, Jr.; Judge Bellacosa concurs in result in a separate opinion; Judge Titone taking no part.
Order affirmed.